THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIKE and KRIS FOSTER, a marital community,<br><br>　　　　　　　　Plaintiffs,<br>　　v.<br><br>THE STATE OF WASHINGTON, DEPARTMENT OF LABOR AND INDUSTRIES and JANINE REES, an individual,<br><br>　　　　　　　　Defendants. | CASE NO. C19-1310-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 13) and Plaintiffs' motion to extend the discovery deadline (Dkt. No. 22). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motion to extend the discovery deadline for the reasons explained herein.

**I.　　BACKGROUND**

In 2016, the Westwater Homeowners' Association hired Diamond Roofing, Inc. ("DRI"), Plaintiffs' former roofing company, to remove and replace roofs of the Westwater Condominiums. (Dkt. No. 14-1 at 3, 7.) DRI served as the general contractor for the project and did not retain subcontractors. (*Id.* at 8.) Leo Farret, an employee of DRI, served as the foreman

for the Westwater project and oversaw several laborers. (*Id.* at 4–5.) The roofs to be replaced contained silver paint. (*Id.* at 7–8.)

DRI removed the old roofs between September 21 and September 26, 2016, and the new roofs were substantially complete by September 30, 2016. (*Id.* at 6–9; *see generally* Dkt. No. 14-3.) Removed material was moved via a garbage chute to the ground south of the southern-most building before laborers moved the material to a nearby dump truck. (Dkt. No. 14-2 at 3.) Plaintiffs and those working on the Westwater project were not trained to handle asbestos-containing materials ("ACM") and did not have Asbestos Hazard Emergency Response Act ("AHERA") certification. (Dkt. Nos. 14-1 at 7, 9–10; *see* Dkt. No. 14-9 at 3–4) (describing AHERA training as relating to how to properly collect samples from job sites). DRI did not test the roofs for ACM prior to removing them. (*See* Dkt. No. 14-1 at 42.)

While the Westwater project was ongoing, a tenant of the Westwater Condominiums complained about "possible roofer exposure to asbestos." (Dkt. No. 14-4 at 4.) Plaintiff Mike Foster testified that DRI learned of the complaint and that he collected a sample of roofing material from the project site's dump truck. (*See* Dkt. No. 14-1 at 16–17.) Mr. Foster further testified that he transported the single sample to Asbestos Northwest, an asbestos testing company, in a sealed plastic envelope. (*Id.* at 17.) Asbestos Northwest's chain of custody form for the sample did not contain a receipt date, an analysis date, or the name of the person who provided the sample. (*See* Dkt. No. 14-1 at 22.) Mr. Foster testified that he directed Shannon Goodman, an employee of DRI, to tell Asbestos Northwest to not include the collection date. (*Id.* at 19–20.) Mr. Foster surmised that the date was omitted because DRI had not collected the sample prior to beginning the Westwater project, as would have been proper. (*See id.* at 19.)

The owner of Asbestos Northwest, Cathy Butler, was deposed in this action. In contrast to Mr. Foster's testimony, Butler testified that DRI submitted three samples for testing on September 30, 2016, that each sample was in a separate Ziploc bag, and that a younger person,

1  not Mr. Foster, had dropped them off. (*See* Dkt. No. 14-9 at 6–8, 11–12.)[1] Butler further testified
2  that Goodman had asked Asbestos Northwest to complete three separate chain of custody forms
3  for the three samples, although customarily one form would be used for multiple samples taken
4  from the same job site. (*See id.* at 8–10.) Butler testified that while the samples all tested
5  negative for ACM, she could not say which project from which the samples originated, who
6  collected the samples, or the date on which the samples were collected. (*Id.* at 18; *see* Dkt. No.
7  14-7 at 1–5) (Asbestos Northwest report finding no ACM in "WW Sample 3"). Butler also stated
8  that any information indicating that the WW Sample 3 originated at Westwater "would have
9  been put in there after [Northwest Asbestos] sent it to [DRI]." (Dkt. No. 14-9 at 15.)
10            On October 3, 2016, Stephen Fry of the Puget Sound Clean Air Agency ("PSCAA")
11  visited the Westwater project site. (*Id.*; Dkt. No. 14-3 at 1.) Fry was told of DRI's practice of
12  using the garbage chute to remove material and found remnants of silver paint near the debris
13  pile under the garbage chute and around a nearby sidewalk. (*See* Dkt. No. 14-3 at 1–2.) Fry
14  collected two samples of silver paint and one, taken from the sidewalk, ultimately tested positive
15  for ACM. (*See id.*; Dkt. No. 14-5 at 1–6.)
16            On October 4, 2016, PSCAA sent DRI notices of violation, which included failure to (1)
17  conduct a survey prior to beginning renovation work, (2) properly dispose of removed ACM, and
18  (3) mark storage containers with warning signs. (*See* Dkt. Nos. 14-3 at 3, 14-6 at 1.) On that
19  same day, Goodman sent Asbestos Northwest's report to Fry. (Dkt. No. 14-10 at 4.) Fry
20  forwarded the email to Defendant Janine Rees, a Washington Safety and Health Act inspector,
21  who in turn asked Butler why information was missing from the chain of custody form. (*Id.* at 2–
22  3.) Butler told Rees about how the samples had been delivered and of Goodman's request that
23  each sample be given a separate chain of custody form. (*Id.* at 1–2.)
24            On October 5, 2016, Rees visited the Westwater project site for her initial investigation.

---

[1] Mr. Foster testified that he did not "have a reason to disbelieve" that the samples were dropped off on September 30, 2016, because he did not remember. (Dkt. No. 14-1 at 21.)

(Dkt. No. 14-4 at 4.) During her initial inspection, Rees saw silver paint in several areas and directed Farret to remove the waste himself or to hire a cleanup contractor to remove the waste. (*See* Dkt. No. 16-1 at 3–4.) Over the next several weeks, Rees spoke with Farret about DRI's handling of ACM and construction materials, spoke with various people about DRI's cleanup efforts, and interviewed Mr. Foster and Farret. (Dkt. No. 16 at 2.) Rees did not collect samples during her investigation; she relied exclusively on laboratory results obtained by PSCAA. (*Id.*)

Initially, DRI conducted cleanup efforts in the Westwater project site. (*Id.*) Following those efforts, on October 19, 2016, Fry found silver paint at the Westwater project site that tested positive for ACM. (*Id.*) On October 20, 2016, Rees visited the site and found additional amounts of silver paint. (*Id.* at 2–3.) DRI then hired Puget Sound Abatement ("PSA"), which conducted cleanup efforts for the Westwater project site on October 25 and 26, 2016. (*Id.* at 2.) But when Rees visited the site on November 1, 2016, she again found silver paint. (*Id.* at 3.) On November 8, 2016, Rees inspected the job site with PSA's worksite project manager and found silver paint in small trees adjacent to the garbage chute used by DRI. (*Id.*) Rees theorized that because the garbage chute was not "dust tight," roofing debris may have escaped and settled into the trees when DRI used the garbage chute to transport debris to the ground. (*Id.*) Rees concluded her investigation on January 12, 2017, and on January 26, 2017, Defendant Washington State Department of Labor & Industries ("L&I") issued a citation to DRI for multiple violations of the Washington Administrative Code. (*Id.* at 3–4; *see* Dkt. No. 16-2 at 1–10.) The citation imposed on DRI a total penalty of $47,250.00. (Dkt. No. 16-2 at 1.)

On July 15, 2019, Plaintiffs sued Defendants in King County Superior Court, asserting claims for violation of 42 U.S.C. § 1983, negligent supervision, and outrage. (Dkt. No. 1-2 at 6.) Plaintiffs' claims center on their allegation that Rees either wrongfully planted ACM or wrongfully alleged that Plaintiffs were not in compliance with asbestos safety regulations. (*Id.* at 5.) Defendants removed the case on August 16, 2019, (Dkt. No. 1), and now move for summary judgment dismissal of Plaintiffs' claims, (Dkt. No. 13).

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 56(d) Continuance

Plaintiffs move for a continuance of Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). (*See* Dkt. No. 18 at 9–11.) Plaintiffs argue that they require Rees's annual performance reviews for the years 2002, 2003, 2004, 2005, and 2006 and that they have not been able to take the deposition of Dan Lafley, Asbestos Northwest's lab manager, due to the COVID-19 pandemic. (*See id.* at 10; Dkt. No. 18-1 at 6.)

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). If the movant fails to satisfy these elements, the motion may be denied and summary judgment may be granted. *Id.*

Here, in response to Plaintiffs' discovery requests regarding Rees's annual evaluations, Defendants notified Plaintiffs that they have "consulted with several people at L&I and asked that HR conduct a thorough search related to the question of missing performance evaluation [sic]" and "concluded that there simply were no performance evaluations completed of Ms. Rees for the period of time in question . . . and thus no additional documents exist." (Dkt. No. 19-3 at 1.) Plaintiffs' affidavit does not provide a reason for concluding that the annual evaluations exist despite Defendants' exhaustive search. (*See generally* Dkt. No. 18-1 at 1–2.) Moreover, Plaintiffs' counsel simply states that "I believe that the missing Performance Evaluations may lead to the discovery of admissible evidence regarding claims of professional misconduct." (*See id.* at 2.) This does not establish that annual evaluations spanning from 2002 to 2006 are

necessary to oppose Defendants' motion for summary judgment dismissal of Plaintiffs' claims, which concern misconduct that allegedly occurred in 2016. (*See generally* Dkt. Nos. 1-2, 13.)

Similarly, Plaintiffs argue that Lafley has "described the tactics Officer Rees has used to create asbestos violations so that citations could be issued" but do not establish how such a description is essential to oppose Defendants' motion for summary judgment. (*See* Dkt. Nos. 18 at 10, 18-1 at 2–3.) And, notably, Lafley refused to sign a declaration prepared by Plaintiffs' regarding his alleged statements. (*See* Dkt. No. 18 at 6.). In fact, Lafley has now executed a declaration which "vehemently den[ies]" Plaintiffs' claims about his statements and asserts that he "refused to sign [Plaintiffs'] declaration because [he] did not want to sign a declaration that was not true." (*See* Dkt. No. 19-5 at 1–2.) As it is unreasonable to assume that Lafley would perjure himself upon sitting for any future deposition, Plaintiffs have failed to establish that their sought facts exist.

In sum, Plaintiffs have not identified facts they hope to elicit from further discovery that exist and which are essential to oppose Defendants' motion for summary judgment. *See Family Home & Fin. Ctr., Inc.*, 525 F.3d at 827. Therefore, Plaintiffs' request for a continuance pursuant to Rule 56(d) is DENIED.

**B.   Summary Judgment Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. But a motion for summary judgment cannot be defeated by either "conclusory allegations unsupported by factual data," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) or

"rank speculation," *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009).

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly supports its motion, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

  **C.**  **42 U.S.C. § 1983 Claims**

    *1.  Defendant L&I*

Defendants move for summary judgment on Plaintiffs' § 1983 claim against L&I. (Dkt. No. 13 at 10–11.) Under § 1983, "[e]very person who, under color of [state law], subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured[.]" Courts have repeatedly held that the word "person," as used in § 1983, does not include states or state agencies. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("A State is not a person within the meaning of § 1983."); *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004) ("State agencies . . . are not 'persons' within the meaning of § 1983, and are therefore not amenable to suit under that statute."); *Webb v. Sloan*, 330 F.3d 1158, 1163–64 (9th Cir. 2003) ("[M]unicipal liability under § 1983 cannot be founded on a theory of respondeat superior."). Here, Plaintiffs acknowledge that L&I "is a governmental agency that hired Defendant Janine Rees." (Dkt. No. 1-2 at 2.) As a state agency, L&I is "not amenable to suit under" § 1983. *See Maldonado*, 370

F.3d at 951. Accordingly, Defendants' motion for summary judgment is GRANTED on this ground.

### 2. *Defendant Rees*

Defendants move for summary judgment on Plaintiffs' § 1983 claim against Rees, arguing that she is entitled to qualified immunity. (Dkt. No. 13 at 11–18.)

Generally, a government official performing a discretionary function is provided qualified immunity, which shields them from liability for civil damages when sued in their individual capacity, "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Acosta v. City of Costa Mesa*, 718 F.3d 800, 824 (9th Cir. 2013) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987) (collecting cases); *Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010).[2] An official's fabrication of evidence may support a claim for violation of the Due Process Clause of the Fourteenth Amendment. *See Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108 & 1108 n.11 (9th Cir. 2010) (quoting *Jones v. State*, 242 P.3d 825, 831–32 (Wash. 2010)) (stating that fabrication of evidence in civil child abuse proceedings violates due process clause "when a liberty or property interest is at stake" and recognizing the Washington Supreme Court's conclusion that "'the deprivation of liberty based on fabricated evidence is a violation of a person's constitutional right to due process'" in the civil context "where property interests protected by the due process clause" are at stake.).

To determine whether an official is entitled to qualified immunity, the court first determines whether "the facts alleged show the officer's conduct violated a constitutional right" when "[t]aken in the light most favorable to the party asserting the injury." *Acosta*, 718 F.3d at 824 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). But, even if a complaint adequately

---

[2] Plaintiffs appear to assert their § 1983 claim against Rees in her individual capacity. (*See* Dkt. No. 1-2 at 1, 6–7.)

alleges facts that violate clearly established law, summary judgment is appropriate "if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The court next determines whether the right was "clearly established," *i.e.*, "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Acosta*, 718 F.3d at 824 (quoting *Anderson*, 483 U.S. at 639). "When [the qualified immunity] test is properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hernandez v. City of San Jose*, 897 F.3d 1125, 1132–33 (9th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Here, Plaintiffs claim that Rees deprived them of their constitutional rights without due process of law in violation of § 1983, alleging that she either "wrongfully planted ACM" at the Westwater project site or "wrongfully alleged that Plaintiffs had not been in compliance" with asbestos safety regulations. (Dkt. No. 1-2 at 5–6.) The record shows that Plaintiffs have not located a witness to corroborate their claim that Rees planted ACM at the Westwater project site. (*See* Dkt. Nos. 14-1 at 26, 14-8 at 3, 18 at 8.) Plaintiffs' allegations of Rees's past misconduct are not supported by the record or admissible evidence and are not relevant to Plaintiffs' claims of misconduct in this case. *See Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980); (Dkt. Nos. 14-1 at 47; 15 at 1–2; 18 at 4–6, 9; 18-1 at 2–3; 18-2 at 3–5; 19-5 at 1–2.) And deposition testimony establishes that the ACM found at the Westwater project site came from the removed roofs via DRI's work, not misconduct by Rees. (*See* Dkt. Nos. 14-1 at 32–33, 14-2 at 4–6.)

In response to the evidence in the record and Defendants' motion for summary judgment, Plaintiffs point to "circumstantial evidence" they claim "demonstrate[s] a reasonable inference that the jury could find in their favor." (Dkt. No. 18 at 8.) But that "circumstantial evidence," unsupported by citation to the record or evidence substantiating Plaintiffs' accompanying

declarations,[3] is insufficient to show a genuine dispute of material fact on the issue of whether Rees's conduct violated Plaintiffs' constitutional rights. (*See id.* at 9.) Plaintiffs' reliance on Asbestos Northwest's testing of Plaintiffs' sample is misplaced: the results of that test do not weigh on the issue of whether Rees planted ACM at the site, and the lack of information on the sample's chain of custody forms (apparently done at Plaintiffs' behest) precludes verification that the sample came from the Westwater project site (*See* Dkt. Nos. 14-1 at 19, 33; 14-9 at 16, 18.) The mere fact that Rees continued to find ACM at the site after DRI and PSA conducted cleanup efforts, absent more, does not establish that Rees planted that material. (*See* Dkt. No. 18 at 9.) Plaintiffs' assertion that "new PVC membrane completely covered the roof such that none of the previously existing roof debris could have blown off" does not address evidence that ACM may have been dispersed by DRI's moving of roofing debris through the garbage chute and to the dump truck. (*See* Dkt. Nos. 14-2 at 3–6, 16 at 2.) Plaintiffs' allegation that Rees planted asbestos warning tape, (*see* Dkt. No. 18 at 3, 9), is belied by Fry's report that he placed asbestos warning tape at the site, (Dkt. No. 19-2 at 2). And Plaintiffs' complaint that Defendants did not take samples from the roof to test whether the ACM on the ground matched that in the removed roofs (Dkt. No. 18 at 9), does not weigh on the issue of whether Rees planted ACM at the Westwater project site.[4]

In sum, Plaintiffs have not offered evidence sufficient to create a genuine dispute of material fact on the issue of whether Rees fabricated evidence or otherwise violated Plaintiffs' constitutional rights contrary to § 1983. *See Costanich*, 627 F.3d at 1108 & 1108 n.11; *Acosta*, 718 F.3d at 824; *Mitchell*, 472 U.S. at 526. Accordingly, Rees is entitled to qualified immunity

---

[3] Plaintiffs state that their response "is based on the Declarations of Plaintiff Mike Foster, and the undersigned legal counsel." (Dkt. No. 18 at 1; *see* Dkt. Nos. 18-1, 18-2.) Plaintiffs' response is otherwise devoid of citations to the record. *See* Fed. R. Civ. P. 56(c); (*see generally* Dkt. No. 18).

[4] Notably, Plaintiffs' argument attempts to shift the burden of testing the original roofing material from them to Defendants, contrary to the applicable provisions of the Washington Administrative Code. *See* Wash. Admin. Code § 296-62-07721(2)(b)(ii),

1  from Plaintiffs' § 1983 claims against her in her individual capacity, and Defendants' motion for
2  summary judgment is GRANTED on this ground.

### D.   Supplemental Jurisdiction

District courts have original jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1441(b). "The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." *Foster v. Wilson*, 504 F.3d 1046, 1051 (9th Cir. 2007) (citing 28 U.S.C. 1367(c)(3); *Fang v. United States*, 140 F.3d 1243–44 (9th Cir. 1998)). While not mandatory, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Plaintiffs' remaining claims for negligent supervision and outrage arise under Washington law. (*See* Dkt. Nos. 1-2 at 6, 13 at 18–23.) Given the dismissal of Plaintiffs' federal § 1983 claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, which will be remanded to the King County Superior Court for further adjudication. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 13) is GRANTED as to Plaintiffs' 42 U.S.C. § 1983 claims. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and DIRECTS the Clerk to REMAND this case to King County Superior Court. The Court further DIRECTS the Clerk to transmit a certified copy of this order to the clerk of the King County Superior Court. Plaintiffs' motion for an extension of time to complete discovery (Dkt. No. 22) is DENIED as moot.

//

DATED this 21st day of July 2020.

						A
						John C. Coughenour
						UNITED STATES DISTRICT JUDGE